UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

AARON JONATHON ZEMKE,

               Petitioner,               Case No. 1:20-cv-20

v.                                 Honorable Janet T. Neff

CHRIS KING,

               Respondent.

_____/

## OPINION

    This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Aaron Jonathon Zemke is incarcerated with the Michigan Department of Corrections at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. He comes to this Court after pleading *nolo contendere* in the Berrien County Circuit Court to first-degree child abuse, in violation of Mich. Comp. Laws § 750.136b(2). On March 13, 2017, the circuit court sentenced Petitioner to a prison term of 20 to 80 years.

    On January 10, 2020, Petitioner filed his habeas corpus petition. (ECF No. 1.) After exhausting his previously unexhausted claims and with leave of court, Petitioner filed an amended petition on June 2, 2022. (ECF Nos. 14 and 15.) The amended petition raises two grounds for relief, which Petitioner has divided into eight arguments as follows:

    I.    Denial of Effective Assistance of Counsel Under the Sixth and Fourteenth Amendments

          A.    Mr. Zemke received ineffective assistance under the Sixth and Fourteenth Amendments when counsel prejudiced Mr. Zemke by submitting a delayed, severely deficient, and failed motion to withdraw over a month after Mr. Zemke requested plea withdrawal.

B.   Mr. Zemke received ineffective assistance under the Sixth and Fourteenth Amendments when his counsel demonstrated a conflict of interest with Mr. Zemke by declaring at sentencing that Mr. Zemke "deserved to be punished, he deserves to go to prison, he deserves, perhaps, even a long prison sentence." in violation of federal *Strickland* precedent.

C.   Mr. Zemke received ineffective assistance under the Sixth and Fourteenth Amendments when counsel failed to investigate exculpating testimony and witnesses to demonstrate that T.Z.'s stepmother was the sole subject of the allegations and failed to investigate T.Z.'s repeated statements that Mr. Zemke did not and could not know about the allegations.

D.   Mr. Zemke received ineffective assistance under the Sixth and Fourteenth Amendments when counsel failed to investigate the case and provide evidence of Mr. Zemke's medical diagnoses that validated his request for plea withdrawal and which corroborated his assertion of innocence.

E.   Mr. Zemke received ineffective assistance under the Sixth and Fourteenth Amendments when counsel made fundamental misrepresentations of the law to deprive Mr. Zemke of his constitutional right to trial by jury to assert his innocence when he threatened Mr. Zemke with life imprisonment to induce a plea bargain.

II.   Denial of Fifth Amendment Right to Due Process

A.   Mr. Zemke's Fifth Amendment right to Due Process was violated when the trial court based its judgment on unreasonable determinations of fact contrary to the record when it denied Mr. Zemke's plea withdrawal request which included an assertion of innocence and was made before sentencing.

B.   Mr. Zemke's Fifth Amendment right to Due Process was violated when the trial court based its judgment on unreasonable determinations of fact contrary to the record when it denied Mr. Zemke's plea withdrawal request based on inaccurate and improperly asserted prejudice by the prosecution.

C.   Mr. Zemke's Fifth Amendment right to Due Process was violated when the trial court based its judgment on unreasonable determinations of fact contrary to the record when it displayed bias and prejudice when it openly supported the prosecution's presentation of the case in court.

(Am. Pet., ECF No. 14, PageID.609.) Respondent contends that Petitioner's grounds for relief are meritless. (ECF No. 18.)[1] Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), the Court agrees. Because Petitioner has failed to set forth a meritorious federal ground for habeas relief, the Court will deny his petition for writ of habeas corpus.

## Discussion

### I. Factual Allegations

On January 23, 2017, Petitioner appeared before the Berrien County Circuit Court to enter an unconditional plea of no contest to the charge of first-degree child abuse in exchange for the dismissal of his remaining charges, including torture, assault with a dangerous weapon, and aggravated domestic violence. (Plea Hr'g Tr., ECF No. 8-3, PageID.253, 259.) Petitioner testified under oath that he understood that he was being charged with knowingly or intentionally causing serious physical harm and/or mental harm to a child, punishable by up to life in prison. (*Id.*, PageID.256.)

---

[1] Respondent also contends that Petitioner has not exhausted and has procedurally defaulted Ground II (in part). (ECF No. 18, PageID.712.) However, a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claim.

In entering his no-contest plea, Petitioner confirmed that he had discussed the case fully with his attorney and that defense counsel had explained the charges and the plea agreement, answered Petitioner's questions, and explained Petitioner's rights. (*Id.*, PageID.257–58.) Petitioner testified that he was satisfied with the representation that defense counsel had provided, (*id.*, PageID.258), and that his plea was made voluntarily, of his own free will, and with no threats, promises, or inducements (*id.*, PageID.260–61). Pursuant to Petitioner's request, the trial court used the preliminary examination transcript as the factual basis for the plea. (*Id.*, PageID.261.) The trial court recited the following:

> Timothy testified that during this period of time of 2014 through August of 2016, he was living with his parents, Alicia and--a step--stepmom I believe it is, Alicia Zemke and his father, Aaron Zemke, at 103 Sherman Street, and that was in Galien Township, in Berrien County, Michigan.

> Timo-- Timothy was--testified that during this period of time, he was deprived of food and water, primarily food, by his parents, and, actually ended up running away in August, where he was found sleeping next to railroad tracks near- Galien.

> He testified that Alicia, whom he identified here in court, and his father, who he also identified here in court, were not feeding him, that he, on numerous occasions, tried to tell his father that he was being deprived of food, and that his mother--step mother would not feed him.

> He also testified, when I--quote, When I'd come out for dinner, they'd say, 'Oh, you're too late', or something like that, and wouldn't feed him. He did get water. He also testified that there were locks on the refrigerator and the cupboard, where the food was.

> The testimony also was that, he was approximately 11 when his father hit him in the --with a broom; testified, "He had the broom like a baseball bat and he, like, used it like he was throwing a baseball bat at my head."

> And, "QUESTION: Hit you? ANSWER: Yes. QUESTION: And where did you get hit? ANSWER: Right here." Basically, referring to, his head.

> "QUESTION:  Did you have any injuries?  Did you get hurt?  ANSWER:  Yes, gushing blood.   QUESTION:   Did anyone--body take you to the doctor?  ANSWER:  Yes, eventually they did, after they realized."

And, said he was approximately 11 years old at that time. He also was struck in--in the face with a belt buckle by Alicia, cutting him--and split--splitting his lip, and they took him, meaning the parents, to the hospital.

Also, he testified that he was--he had to sleep on the floor with just a sheet, no pillow, no blankets, whereas the other children had those at their disposal.   He also testified that part of his diet was spoiled, rancid beans out of a can.

Dr. Anderson - was, Desiree Marie Anderson, the pediatrician at Lakeland, testified - and she was qualified as an expert witness, testified that in August of 2016, approximately August 11th, she received a call from an ER physician in Niles stating he had a case of a child with a low BMI, which he—she'd--defined as Body Mass Index, the measure of the weight for the height of a child.  She saw him to be extremely thin and malnourished.

"I was able to s—" This is her testimony:   "I was able to clearly visualize between all of his ribs. I was able to see his entire collarbone; his shoulder blades were quite prominent.  He had a bruise under his left eye, cut on his lip, cigarette burn - what appeared to be a cigarette burn--burn in his back and other--in various stages of healing.  He had bruises on his shins; sunken eyes; wasn't able to stand without support.   Determined that he was less than the fifth percentile for children that age for--and that he was remarkably short for a child of--of his age; that is, he was about average for an 8 year old at the age of 12 years old due to chronic malnutrition.

She testified that he was 51.4 inches tall and should have been about 55, as average.

(*Id.*, PageID.262–64.) The parties agreed that these facts were sufficient to support Petitioner's plea. (*Id.*, PageID.264.) Consequently, the trial court accepted the facts as sufficient support for a finding that Petitioner had committed the crime of first-degree child abuse and accepted Petitioner's plea of no contest as knowing, voluntary, and understandingly made. (*Id.*, PageID.264–65.)

On March 9, 2017, Petitioner submitted a motion to withdraw his plea (Pet'r's Mot. to Withdraw Plea, ECF No. 8-5, PageID.342) and, with it, an affidavit, stating that Petitioner had not had sufficient time to "read and re-read" the testimony by "the children," who Petitioner believes "did not say any horrible things about [him]." (Pet'r's Aff., ECF No. 8-5, PageID.319.)

On March 13, 2017, Petitioner appeared in court for sentencing. (Sentencing Hr'g Tr., ECF No. 8-4, PageID.269.) However, the trial court first addressed Petitioner's motion to withdraw his plea. (*Id.*)

In requesting that he be permitted to withdraw his plea, Petitioner, through his counsel, explained that Petitioner suffers from PTSD, including memory and cognitive difficulties, and therefore had difficulty fully comprehending the plea offer because it came in very late in the case. (*Id.*, PageID.269–70.) Because of his difficulty processing the plea agreement, Petitioner felt that he had made the wrong decision and wanted to withdraw his plea. (*Id.*, PageID.270.) The trial court denied Petitioner's motion. (*Id.*, PageID.277.) The court cited Petitioner's testimony that his counsel had explained the charges and potential consequences to him in full and that he had had the opportunity to discuss the case with his counsel and have all of his questioned answered before entering his plea. (*Id.*, PageID.275.) The court also noted that Petitioner had confirmed at the time of his plea that he had no questions about the plea agreement, that he had gone over it with counsel, and that it was freely and voluntarily entered into. (*Id.*, PageID.276.)

In moving on to address sentencing, Petitioner's counsel argued that there were "redeeming factors" for the circuit court to consider. (*Id.*, PageID.287.) Defense counsel spoke about Petitioner's military service and how, as a result, Petitioner is a "broken and damaged individual suffering from PTSD." (*Id.*) Defense counsel argued that the PTSD should be considered a mitigating factor (*id.*, PageID.288) and that the recommended sentence was "woefully out of proportion with the actions of [Petitioner]," which counsel described as primarily grossly negligent rather than intentional (*id.*, PageID.290). Counsel further argued:

> My client deserves to be punished, he deserves to go to prison, even a long prison sentence; but I am asking this Court to sentence him to the minimum under the guidelines, to 10 and a half years in prison. Judge, a 10 and a half year prison sentence on a case like this, with someone with almost no prison record, is still

> commensurate with the sentences this Court and any other court gives out to some
> of the most serious crime committed in our society, and would still be a very serious
> and meaningful sentence in terms of justice in this case.

(*Id.*, PageID.290–91.)

The trial court acknowledged Petitioner's PTSD, but explained, "people with PTSD . . . don't treat their children like that. That's about the lamest excuse I've ever seen. And while I appreciate anybody who represents their country and wears the uniform of their country, that's not an excuse." (*Id.*, PageID.294.) The court rhetorically asked Petitioner: "You can't tell that [your child was] being starved to death? Everybody else could." (*Id.*)

The trial court sentenced Petitioner to 20 to 80 years in prison. (*Id.*, PageID.296.) It explained that the sentence imposed was beyond the sentencing guidelines but reasonable "given the extraordinary factors that are involved in what happened to this child." (*Id.*, PageID.297.) The trial court found that the guidelines failed to give sufficient weight "to the seriousness of what occurred to this child who was within probably days of dying." (*Id.*)

Petitioner filed a delayed application for leave to appeal on September 2, 2017, arguing that the trial court erred in refusing to allow Petitioner to withdraw his plea because Petitioner's plea was not knowing and voluntary, Petitioner was denied effective assistance of counsel, and because the trial court had demonstrated bias against Petitioner in discussing the psychological trauma to the victim. (Pet'r's Appeal Br., ECF No. 8-5, PageID.300–18.) By order entered on October 27, 2017, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." (10/27/17 Mich. Ct. App. Ord., ECF No. 8-5, PageID.299.) The Michigan Supreme Court also denied Petitioner's application for leave to appeal on July 27, 2018. (7/27/18 Mich. Sup. Ct. Ord., ECF No. 8-6, PageID.457.) Petitioner filed a petition for writ of certiorari to the United States Supreme Court, which was denied on January 14, 2019. (ECF No. 8-6, PageID.497.)

Petitioner filed his original petition for writ of habeas corpus on January 10, 2020. (ECF No. 1.) Following Respondent's motion to dismiss the petition for failure to exhaust state court remedies (ECF No. 7), the Court entered an order staying the proceedings and holding them in abeyance to allow Petitioner to exhaust his state court remedies on his previously unexhausted claims (ECF Nos. 10 and 11). The Court instructed that this case would be administratively closed until such time as Petitioner filed a motion to amend his petition, including an amended petition that includes only exhausted claims. (*Id.*)

Petitioner filed a motion for relief from judgment in the Berrien County Circuit Court on October 20, 2020, asserting the previously unexhausted claims that are the subject of this petition. (Pet'r's Mot., ECF No. 19-2.) The trial court denied Petitioner's motion on October 7, 2021, finding "no merit to Defendant's arguments." (10/7/21 Cir. Ct. Ord., ECF No. 19-6.) By order entered on January 3, 2022, the Michigan Court of Appeals denied Petitioner's application for leave to appeal because Petitioner had "failed to establish that the trial court erred in denying the motion for relief from judgment." (1/3/22 Mich. Ct. App. Ord., ECF No. 19-7, PageID.897.) The Michigan Supreme Court similarly denied Petitioner relief on May 3, 2022, because Petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). (5/3/22 Mich. Sup. Ct. Ord., ECF No. 19-8, PageID.985.)

Petitioner subsequently filed a motion for leave to file his amended petition (ECF No. 13), which was granted by this Court on June 2, 2022 (ECF No. 15).

## II.   AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in

state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a

habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

Petitioner identifies two grounds for relief: denial of effective assistance of counsel, and denial of his fifth amendment right to due process. (ECF No. 14, PageID.609.) Each of these grounds are divided into several discrete arguments, for a total of eight. (*Id.*) Yet, no matter how Petitioner's arguments are arranged, his claims are misguided and disregard the deference to the state court's determination that the AEDPA requires.

### A.   Ineffective Assistance of Counsel

Petitioner claims that he was deprived of effective assistance of counsel, in violation of his Sixth and Fourteenth Amendment rights. (ECF No. 14, PageID.609.) He asserts that counsel was ineffective for: (A) submitting a delayed, severely deficient, and failed motion to withdraw; (B) acknowledging Petitioner's guilt at sentencing and declaring that Petitioner "deserved to be punished, he deserves to go to prison, he deserves, perhaps, even a long prison sentence;" (C) failing to investigate exculpating testimony and witnesses; (D) failing to investigate and provide evidence of Petitioner's medical diagnoses; and (E) representing to Petitioner that he faced life imprisonment in order to induce a plea bargain. (*Id.*) Petitioner presented his claims to the state courts in two parts. Both were denied for lack of merit.

11

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

### 1.    Argument A – Motion to Withdraw Plea

Petitioner first argues that trial counsel was ineffective in submitting a delayed, deficient, and failed motion to withdraw Petitioner's no-contest plea. Although a claim that the trial court should have permitted plea withdrawal would not be cognizable on habeas review[2], Petitioner's claim that counsel rendered ineffective assistance in the course of seeking that relief is reviewable.

---

[2] Any claim that the trial court erred in refusing to allow Petitioner to withdraw his plea would not be cognizable on habeas review because a state criminal defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).

However, because the underlying claim—the propriety of plea withdrawal—is a state-law claim, the Court is bound by the state court's determination of that issue.

Here, Petitioner argued to the Michigan Court of Appeals that the trial court should have allowed Petitioner to withdraw his plea, (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 8-5, PageID.308–14.) The Michigan Court of Appeals concluded that Petitioner's claim lacked merit. (Mich. Ct. App. Order, ECF No. 8-5, PageID.299.) As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

The court of appeals' determination that the trial court's refusal to permit plea withdrawal was proper is, therefore, axiomatically correct on habeas review. Because the trial court acted properly when it did not allow Petitioner to withdraw his plea, the proposed motion seeking that relief—even if filed in the manner that Petitioner proposes—would have been meritless. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, any claim that counsel rendered ineffective assistance because he submitted a delayed or deficient motion for plea withdrawal fails. Petitioner has likewise failed to demonstrate that the state court's rejection of the claim is contrary to, or an unreasonable application of clearly established federal law.

### 2.    Argument B – Comments During Sentencing

Petitioner contends that his trial counsel was ineffective when he acknowledged Petitioner's guilt during sentencing and expressed the belief that Petitioner "deserves to be

punished." (Am. Pet., ECF No. 14, PageID.619.) However, Petitioner's arguments, including Petitioner's reliance on *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), (Am. Pet., ECF No. 14, PageID.619), demonstrate a fundamental misunderstanding of the applicable law and a slanted presentation of the state court proceedings.

First, *McCoy* stands for the proposition that an attorney may not admit guilt over the client's express objection to maintain his innocence. 138 S. Ct. at 1511. Here, however, trial counsel did not "violate[] his client's right to assert innocence" (Am. Pet., ECF No. 14, PageID.621). On January 23, 2017, Petitioner chose not to maintain his innocence to the charge of first-degree child abuse by pleading no contest; his subsequent motion to withdraw that plea was properly denied, *see* Sec. III.A.1. Under Michigan law, a no-contest plea "has the same consequences as a guilty plea." *People v. Tomlinson*, 50 Mich. App. 655, 657, 213 N.W.2d 803 (1973). "Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea." *People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted). Therefore, Petitioner's guilt was not, as he contends, counsel's "personal belief" (Am. Pet., ECF No. 14, PageID.619), it was a *fact* that had already been determined by the trial court. Acknowledging that fact at sentencing was not only objectively reasonable; but, to do otherwise, would have been illogical and would almost certainly have inspired additional ire from the trial court.

Moreover, even if counsel had not affirmatively acknowledged Petitioner's guilt, the result would have been no different. The trial court rejected Petitioner's motion to withdraw his plea and the acknowledgment of his guilt, (ECF No. 8-4, PageID.276), and the Court of Appeals agreed, concluding that Petitioner's efforts to withdraw his plea lacked merit, (Mich. Ct. App. Order, ECF No. 8-5, PageID.299). Thus, regardless of counsel's arguments, the state courts accepted

14

Petitioner's guilt. Petitioner was not prejudiced by counsel's acknowledgment of the same at the sentencing phase of the proceedings.

Second, in contending that his counsel displayed a "conflict of interest" by arguing that Petitioner "deserves to be punished" (Am. Pet., ECF No. 14, PageID.620), Petitioner fails to provide the Court with his counsel's full statement. At sentencing, after presenting arguments in mitigation of Petitioner's crime, defense counsel stated:

> My client deserves to be punished, he deserves to go to prison, even a long prison sentence; *but I am asking this Court to sentence him to the minimum under the guidelines, to 10 and a half years in prison*. Judge, a 10 and a half year prison sentence on a case like this, with someone with almost no prison record, is still commensurate with the sentences this Court and any other court gives out to some of the most serious crime committed in our society, and would still be a very serious and meaningful sentence in terms of justice in this case.

(Sentencing Hr'g Tr., PageID.290–91) (emphasis added.) This statement plainly represents a reasonable effort at minimizing Petitioner's inevitable prison sentence.

Petitioner appears to imply that his counsel should have argued for no punishment at all. Such a strategy would have been wholly incredible; Petitioner was, after all, before the court for sentencing. Michigan law provides that "[c]hild abuse in the first degree is a felony punishable by imprisonment for life or any term of years." Mich. Comp. Laws § 750.136b(2). And the record reveals a sentencing guideline range of 10 and a half years to nearly 17 and a half years. (ECF No. 8-4, PageID.279.) Given the horrific facts presented to the trial court, this Court cannot say that defense counsel's decision to request a sentence at the lowest end of those guidelines was professionally unreasonable.

Likewise, a review of the record reveals that counsel's statements at sentencing did not prejudice Petitioner. The trial court did not accept the ten-and-a-half-year sentence proposed by defense counsel, and it flatly rejected counsel's attempts at presenting "redeeming factors" in mitigation of Petitioner's crime, including the military service and PTSD which appear to be the

focus of the amended petition. (*Id.*, PageID.287, 294–96). Instead, the trial court exceeded even

the top end of the sentencing guidelines when it sentenced Petitioner to 20 to 80 years in prison,

(*id.*, PageID.296), finding that the guidelines failed to give sufficient weight "to the seriousness of

what occurred to this child who was within probably days of dying." (*id.*, PageID.297). Under

those circumstances, this Court cannot possibly conclude that the strategic decision by defense

counsel to request a sentence at the low end of the guidelines rather than no sentence at all had any

negative effect on the judgment. *See Strickland*, 466 U.S. at 691.

### 3.    Arguments C and D – Failure to Investigate Possible Defenses

Petitioner contends that his trial counsel was ineffective in failing to investigate

exculpating testimony and witnesses that Petitioner believes would demonstrate that Petitioner's

wife, not Petitioner, was at fault for the abuse of the victim. Petitioner also claims that defense

counsel was ineffective in failing to investigate Petitioner's medical diagnoses. These claims of

ineffective assistance of counsel claim do not survive Petitioner's no-contest plea.

Claims about the deprivation of constitutional rights that occur before the entry of a guilty

plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v.*

*Henderson*, 411 U.S. 258, 267 (1973). The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in
> the criminal process. When a criminal defendant has solemnly admitted in open
> court that he is in fact guilty of the offense with which he is charged, he may not
> thereafter raise independent claims relating to the deprivation of constitutional
> rights that occurred prior to the entry of the guilty plea. He may only attack the
> voluntary and intelligent character of the guilty plea by showing that the advice he
> received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.

The same principle applies to Petitioner's no-contest plea:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest
> his factual guilt, any claims or defenses which relate to the issue of factual guilt are
> waived by such a plea. Claims or defenses that challenge a state's capacity or ability

to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*New*, 398 N.W.2d at 363 (footnotes omitted). Thus, "[l]ike a plea of guilty, a plea of *nolo contendere* constitutes a waiver of all so-called 'non-jurisdictional defects' or, more accurately, any claims not logically inconsistent with the issue of factual guilt[.]" *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).

Plaintiff's arguments related to his trial counsel's failure to pursue what Petitioner believes were available defenses do not attack the voluntary or intelligent nature of his plea, but instead relate to earlier alleged constitutional deprivations. The claims have therefore been waived by his subsequent guilty plea. *See United States v. Stiger*, 20 F.App'x 207, 308–09 (6th Cir. 2001); *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (holding that pre-plea ineffective assistance of counsel claims are waived). Petitioner is not entitled to habeas relief on this argument.

**4.   Argument E – Representations as to Strength of the Case and Potential Punishment**

Petitioner asserts that trial counsel improperly informed Petitioner that Petitioner had a "shit case" and that he faced potential life imprisonment should he not accept the prosecution's offered plea agreement. (ECF No. 14, PageID.630.) In general, an argument that trial counsel provided incorrect legal advice as to possible punishment and the strength of the case is cognizable on habeas review because having notice of the nature of the charge is essential to ensure a voluntary and intelligent plea. *See Tollett*, 411 U.S. at 266–67. However, while not waived, Petitioner's argument is meritless.

Petitioner first raised these arguments in his motion for relief from judgment. As the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application

17

of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential," per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . ." (citing *Harrington*, 562 U.S. at 102)).

The circuit court resolved Petitioner's ineffective assistance of counsel under the *Strickland* standard. (10/7/21 Cir. Ct. Ord., ECF No. 19-6, PageID.894.) ("The *Strikland* Court provided a two-prong test to determine whether trial counsel was ineffective . . .").) Thus, there is no question that the state court applied the correct standard.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Because the state court applied the correct standard, Petitioner can only overcome the

deference afforded state court decisions if the determination regarding Petitioner's ineffective

assistance claims is an unreasonable application of *Strickland* or if the state court's resolution was

based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The Court will, therefore,

consider whether the state court reasonably applied the *Strickland* standard for Petitioner's claim

of ineffective assistance of counsel.

The circuit court concluded that Petitioner had not "demonstrated that defense counsel was

in any way ineffective." (10/7/21 Cir. Ct. Ord., ECF NO. 19-6, PageID.894.) It observed that, at

the time of sentencing, Petitioner responded that no one had threatened or promised him anything

in exchange for his plea. (*Id.*) The Court of Appeals agreed, concluding that Petitioner had "failed

to establish that the trial court erred in denying the motion for relief from judgment. (1/3/22 Mich.

Ct. App. Ord., ECF No. 19-7, PageID.897.) Petitioner has not shown that those determinations

were unreasonable.

Contrary to Petitioner's view of the record, it was not unreasonable for defense counsel to inform Petitioner that the evidence against him was overwhelming. On August 11, 2016, Petitioner's twelve-year-old son was found near the railroad tracks dirty, emaciated, and with no shoes. (Prelim Exam. Tr., ECF No. 8-2, PageID.99, 103, 111.) He had not eaten in days and did not want to go home, afraid that, if he did, he would not live to see age thirteen. (*Id.*, PageID.105.) He testified that he had run away from home because he had told his father that he was not being fed, and his father did not believe him. (*Id.*, PageID.119, 125.)

At the preliminary examination, testimony revealed that Petitioner was home every night for dinner while his son was not being fed with the rest of the family's children, often eating a diet of rancid beans. (*Id.*, PageID.124–25.) Instead, Petitioner and his wife kept locks on the refrigerator and cupboards to prevent the child from accessing food. (*Id.*, PageID.126.) And, at times, Petitioner and his wife even started watching the child in the bathroom to prevent him from drinking water. (*Id.*, PageID.146, 173–74.) Despite his son's pleas on more than one occasion, Petitioner refused to feed his child, leaving the child to think that he was going to die. (*Id.*, PageID.32–33, 134)

Expert testimony revealed that Petitioner's son suffered from chronic malnutrition "longer than a few months, probably one or two years." (*Id.*, PageID.184.) Upon being found, Petitioner's son appeared "extremely thin and malnourished." (*Id.*, PageID.180.) His treating physician was able to see between each of his ribs and visualize his collarbone and prominent shoulder blades. (*Id.*) Petitioner's son had bruises, cuts, and cigarette burn marks on his body in various states of healing and was so weak that he could not stand without support. (*Id.*) His body mass index was so low it could hardly be calculated by the hospital's computers. (*Id.*, PageID.181.)

Petitioner's son described that he was made to sleep with a sheet on the floor while all of the family's other children were given beds with blankets and pillows. (*Id.*, PageID.136.) He also described the incident discussed by the court at sentencing, in which Petitioner struck his son's head with a broom as if hitting a baseball with a bat, leading to a head injury "gushing blood," and requiring medical attention. (*Id.*, PageID.134–135, 160–61.) No matter what else Petitioner's son may have said about the abuse also perpetrated by his stepmother or his unconditional love for his father (Am. Pet., ECF No. 14, PageID.623–24), it was not unreasonable for defense counsel to inform Petitioner that his case was weak.

It was also not unreasonable for defense counsel to inform Petitioner that he may be facing a sentence of life in prison. Petitioner originally faced charges of torture, first-degree child abuse, assault with a dangerous weapon, and aggravated domestic violence (second offense). (Plea Hr'g Tr., ECF No. 8-3, PageID.253, 259.) Both torture, Mich. Comp. Laws § 750.85(1), and child abuse in the first degree, Mich. Comp. Laws § 750.136b(2), carry maximum penalties of life in prison. Trial counsel's opinion that Petitioner could be found guilty of the charged offenses and that he faced the possibility of life imprisonment "is not coercive," but critically important legal advice. *Williams v. United States*, 47 F. App'x 363, 370 (6th Cir. 2002); *see also United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004) ("[A]ccurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive"). Petitioner simply has not demonstrated that defense counsel's performance with regard to Petitioner's possible life sentence or the strength of Petitioner's case was professionally unreasonable. To the contrary, the record indicates that Petitioner's counsel provided valid advice about the nature of the charge such that Petitioner's guilty plea was knowing, intelligent, and voluntary. Therefore, Petitioner is not entitled to habeas relief.

### B.    Due Process

Petitioner next contends that the trial court violated his right to due process when it denied Petitioner's request to withdraw his plea. He claims that he should have been permitted to withdraw his plea under MCR 6.310(B)(1) "because it was a non-frivolous request made prior to sentencing" and because it "included an assertion of innocence." (Am. Pet., ECF No. 14, PageID.633.) He also contends that the trial court displayed bias toward Petitioner in assessing the "interest of justice" under Michigan law. (*Id.*; Sentencing Tr., ECF No. 8-4, PageID.278.)

First, it is well-established that "a federal court may issue the writ to a state prisoner only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). As noted above, a state criminal defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile*, 874 F.2d 382.

Whether Petitioner should have been permitted to withdraw his guilty plea is, therefore, an issue of state law. And the federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, Petitioner's claim that the state court failed to abide by Michigan law in denying Petitioner the opportunity to withdraw his plea is not cognizable on habeas review. Indeed, the state court of appeals' determination that Petitioner's claim regarding plea withdrawal has no merit is binding on this Court. *See Wainwright*, 464 U.S. at 84; *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

22

The only constitutional challenge that a habeas court may entertain with regard to a plea is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794–95 (6th Cir. 1991).

Although Petitioner attempts to label his arguments as related to Petitioner's "due process" rights, they are not. Under Michigan law, a no-contest plea "has the same consequences as a guilty plea." *Tomlinson*, 50 Mich. App. at 657. Thus, the test for determining the validity of a no-contest plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and several requirements must be met. The defendant pleading guilty must be competent, *see id.* at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*,

23

368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267–68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Other than his arguments of ineffective assistance of counsel, addressed above, Petitioner makes no effort to demonstrate that his no-contest plea was unknowing or involuntary as would be required to bring a cognizable claim for habeas relief. Indeed, the record demonstrates that Petitioner's plea was entered voluntarily with a full understanding of the nature of the charges, their factual bases, and the consequences of the plea.

When a state defendant brings a federal habeas petition challenging the intelligence of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.2d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge*, 431 U.S. at 73 (finding that a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Here, the record demonstrates that Petitioner pleaded no contest to the charge of first-degree child abuse after being fully informed of the nature of the charges. (Plea Hr'g Tr., ECF No. 8-3, PageID.255–56.) Petitioner testified that he understood that he was being charged with knowingly or intentionally causing serious physical harm and/or mental harm to a child, punishable by a sentence of up to life in prison (*id.*, PageID.256), and that he had spoken with his defense counsel, who had answered his questions, explained the charges, and discussed his rights (*id.*, PageID.257). Petitioner testified that the decision to plea no contest was voluntary, of his own free will, without threats or inducements. (*Id.*, PageID.260–61.)

Petitioner's assertions that excerpts of testimony demonstrate that "Alicia Zemke, not Mr. Zemke, was the sole subject of his allegations" (Am. Pet., ECF No. 14, PageID.622–24) and that "my children did not say any horrible things about me like my attorney Mr. Sammis had told me" (Pet'r's Aff., ECF No. 8-5, PageID.319) are entirely unpersuasive. Petitioner's plea was not permitted to stand on unknown statements by Petitioner's children. The trial court accepted Petitioner's no-contest plea because the testimony provided at the preliminary examination—for which Petitioner was present (Prelim Exam. Tr., ECF No. 8-2)—provided "a sufficient factual basis to support a finding of the offense" (Plea Hr'g Tr., ECF No. 8-3, PageID.264). At the time of his plea, Petitioner was fully aware of his son's allegations provided during the preliminary examination, including that they were not "*solely* directed at his stepmother" (Am. Pet., ECF No. 14, PageID.624) (emphasis in original), but his father as well. Petitioner cannot, therefore, say that his plea was uninformed. The Court finds that Petitioner is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that ... jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons, the Court concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## CONCLUSION

The Court will enter an order and judgment denying the petition because Petitioner has failed to raise a meritorious federal claim and denying a certificate of appealability.

Dated:   January 3, 2024                    /s/ Janet T. Neff
                                            Janet T. Neff
                                            United States District Judge

26